## TSIVOGLOU v. UNITED STATES.

District Court, D. Massachusetts.   June 27, 1928.

### No. 2961.

1. **Internal revenue** ⊜⟹7(19)—**Taxpayer in 1919, exchanging property for stock of corporation adjudicated bankrupt in 1921, cannot deduct loss from 1919 income (Revenue Act 1918, § 214 (a), subds. 4, 5, Comp. St. § 6336⅛g (a), subds. 4, 5; Regulations 45, art. 144).**

Where taxpayer in 1919 transferred his business and all assets employed therein to corporation, which he organized for purpose of taking over his business, and corporation issued shares of capital stock in exchange, and corporation was adjudicated a bankrupt in 1921, taxpayer was not entitled to deduct loss, under Revenue Act 1918, § 214 (a), subds. 4, 5, Comp. St. § 6336⅛g (a), subds. 4, 5, from his 1919 income, under article 144 of Regulations 45, where he did not establish by evidence that during year 1919 he definitely determined that stock was worthless.

2. **Internal revenue** ⊜⟹7(19)—**Stock, having no market value, except that established by appraisal of assets, cannot be treated as equivalent of cash to determine loss by exchange (Revenue Act 1918, § 202 (a, b), Comp. St. § 6336⅛bb (a, b); Regulations 45, art. 1566, as amended).**

Corporate stock, having no market and consequently no market value, other than that established by an appraisal of assets, cannot be treated as equivalent of cash for purpose of establishing loss by exchange, under Revenue Act 1918, § 202 (b), Comp. St. § 6336⅛bb(b), under article 1566, of Regulations 45, as amended, since section 202(a), Comp. St. § 6336⅛bb (a), requires application of same rule in determining either loss or gain.

3. **Internal revenue** ⊜⟹7(19)—**Under income tax statute, there is no gain or loss, unless property received in exchange has value realizable in money's worth (Revenue Act 1918, § 202(b), Comp. St. § 6336⅛bb(b); Regulations 45, art. 1563).**

Under Revenue Act 1918, § 202(b), Comp. St. § 6336⅛bb(b), relating to exchanges of property, there is no taxable gain and no deductible loss, unless property received in exchange has value realizable in money's worth, in view of Regulations 45, art. 1563.

4. **Internal revenue** ⊜⟹7(19)—**Taxpayer cannot deduct for loss through exchange, by showing that, at time of exchange, there was no market value of property received in exchange (Revenue Act 1918, § 202(b), Comp. St. § 6336⅛bb(b).**

Taxpayer could not maintain right to deduction, under Revenue Act 1918, § 202(b), Comp. St. § 6336⅛bb(b), for loss resulting

from an exchange of his business and assets for stock in corporation, by showing that at time of exchange there was no market for and no market value of stock received in exchange.

At Law.    Petition by Constantine J. Tsivoglou against the United States to recover an income tax paid on petitioner's income for the year 1919.    Judgment for defendant.

Gaston, Snow, Saltonstall & Hunt, of Boston, Mass., for plaintiff. .

J. M. Leinenkugel, Sp. Asst. U. S. Atty., of Boston, Mass.

BREWSTER, District Judge.    This is a petition brought to recover an income tax paid on petitioner's income for the year 1919. His return, duly filed, showed taxable net income of $148,718.84, and a tax of $60,499.-49 was assessed thereon, of which amount $44,042.75 was paid.    It is this amount the petitioner now seeks to recover.    He claims a right to deduct from his gross income a loss of $149,700, which he failed to deduct in his return, and which, if allowed, would leave no taxable income received by him during the year 1919.

Did the provisions of the Revenue Act of 1918 entitle him to make this deduction from his 1919 income?    This is the sole question presented.    The facts pertinent to this inquiry, briefly stated, are these:

The petitioner since 1913 had been engaged in the business of dealing in confectioners' supplies.    On December 27, 1919, he transferred his business and all the assets employed therein to C. J. Tsivoglou, Inc., a Massachusetts corporation, which he had organized for the purpose of taking over his business and assets.

The corporation assumed all of petitioner's business liabilities and issued to him 149,700 shares, par value, of its capital stock, which was all of its capital stock, except 3 qualifying shares.    This amount represented the excess of the book value of the assets transferred over the liabilities of the business.    The assets were carried on the books at cost.    The market value of these same assets at the date of the transfer was several thousand dollars less than the liabilities. The principal difference between the cost, or book value, and the market value of the assets is found in the item scheduled as "Foreign Exchange."    This item represented foreign exchange in English pounds sterling and French francs, purchased during 1919, the market value of which on December 27, 1919, was $162,015.50 less than their cost to the petitioner.    The new corporation continued in business until March 25, 1921, when it was adjudicated a bankrupt.

The record does not support the claim of the government that the petitioner has failed to sustain his burden of proving the cost or March 1, 1913, value of the assets transferred.    The necessary inference from the agreed statement of facts, upon which this case was submitted, is that all of the assets were acquired since March 1, 1913, and the defendant has expressly agreed that these assets were carried on the books at cost.

The petitioner contends that, as a result of this transaction, he has sustained a loss deductible by reason of those provisions of the Revenue Act of 1918 which appear in sections 202(b) and 214(a), Comp. St. §§ 6336⅛bb(b), 6336⅛g(a).    These provisions, so far as applicable, are as follows:

Section 202 (b):  "When property' is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any. * * * "

Section 214 (a):  "That in computing net income there shall be allowed as deductions. * * * * * * * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business. * * * "

The petitioner's claim for deduction is grounded on either of two propositions:

First.    That he acquired on December 27, 1919, securities for which he paid $149,700, and which were definitely ascertained during that year to be worthless.

Second.    That there was an exchange of property by which the petitioner received corporate stock that had a "fair market value," within the meaning of those words as used in section 202 (b), and that such fair market value might properly be found to be zero.

Respecting the first ground, Regulations No. 45, art. 144, as revised, is as follows:

"A person possessing securities such as stocks and bonds cannot deduct from gross income any loss claimed as a loss on account of shrinkage in value of such securities through fluctuation of the market or otherwise. * * * However, if the stock of a corporation becomes worthless, its cost * * * may be deducted by the owners in the taxable year in which the stock becomes

worthless provided a satisfactory showing of its worthlessness be made as in the case of bad debts."

In the light of subsequent events it is very easy to find that the stock was worthless at the time of the transfer, but it is not so clear that it can be said that the worthlessness was definitely ascertained during the year 1919. The corporation issuing the stock was more than a shell; it continued in business for 15 months, and if the market value of the foreign exchange had risen the stock might have acquired substantial value.

In a recent case the Supreme Court had occasion to deal with the right to deduct bad debts under the provisions of section 234 of the Revenue Act of 1918 (Comp. St. § 6336 ⅛pp), and in the course of his opinion Mr. Justice Stone made these observations:

"The statute was intended to apply, not only to losses resulting from the physical destruction of articles of value, but to those occurring in the operations of trade and business, where the business man has ventured on a course of action in the reasonable expectation that the promised conduct of another will come to pass. Not only the future success of the business, but its present solvency, depends on the probable accuracy of his prophecy. Only when events prove the prophecy to have been false can it be said that he has suffered. His case is not like that of a man who fails to learn of the theft of his bonds or the burning of his house until a year after the occurrence, but rather resembles the position of a merchant who buys in one year, for sale in the next, merchandise which shifting fashion renders unsalable in the latter. It may well be that he whose house has been burned has sustained a loss, whether he knows it or not, and may recover a tax paid in ignorance of that material fact. But we cannot say that the merchant whose action has been based, not merely on ignorance of a fact, but on faith in a prophecy—even though the prophecy is made without full knowledge of the facts—can claim to have sustained a loss before the future fails to justify his hopes." Lewellyn v. Electric Reduction Co., 275 U. S. 243, 48 S. Ct. 63, 72 L. Ed. ——.

The petitioner has cited numerous decisions of the Board of Tax Appeals, from which it is possible to deduce the proposition that it is not necessary that the securities be sold, or that the corporation issuing the securities shall have actually been liquidated in bankruptcy or in receivership. De Loss v. Commissioner, 6 B. T. A. 784; Preston v. Commissioner, 7 B. T. A. 414; Mellick

v. Commissioner, 6 B. T. A. 70; Joslyn Mfg. & Supply Co. v. Commissioner, 6 B. T. A. 749.

[1] To this general proposition I can readily assent, but when we are dealing with stock in a going corporation, the value of whose shares largely depends upon a fluctuating market value of English pounds sterling, or French francs, it is difficult to say that a loss has been sustained "before the future fails to justify" hopes and expectations. My opinion, therefore, is that the petitioner cannot prevail on the theory that he has sustained a loss, deductible in accordance with article 144 of Regulations 45, above quoted. He does not establish by the evidence that during the year 1919 he definitely determined that the stock was worthless, or, to use the words of the Regulation, there was no "satisfactory showing of its worthlessness" during the taxable year in question.

Respecting the second ground upon which the petitioner bases his claim for deduction, I find from the evidence that shares of stock in similar trading corporations showing materially different statements of resources and liabilities and earning power are bought and sold on the market, but that the stock of the C. J. Tsivoglou, Inc., had no market and no actual market value at the time of the exchange.

Whether the deduction can be allowed under section 202 (b) depends upon the construction to be put upon the words "fair market value" appearing in said section, and the words "market value" appearing in article 1566 of Regulations 45, which, as amended, reads as follows:

"Where property is transferred to a corporation in exchange for its stock the exchange constitutes a closed transaction and the former owner of the property realizes a gain or loss if the stock has a market value and such value is greater or less than the cost * * * of the property given in exchange. * * * *"

The Board of Tax Appeals, in cases cited, has evidently proceeded on the theory that, if the property received in exchange has no market value established by actual sales, it may proceed to determine the value of the stock by ascertaining the value of the property represented by the stock, and that such value for the purposes of section 202 (b) may be deemed the fair market value. Appeal of W. Zeigler, Jr., 1 B. T. A. 186; Appeal of Charles T. Plunkett et al., 3 B. T. A. 1265.

The federal courts, however, have refused to sanction this method when it was applied

for the purpose of establishing a gain resulting from a transfer of property to a corporation in exchange for the shares of its stock, there being no market for the shares. Bourn v. McLaughlin (D. C.) 19 F.(2d) 148. It is true that this case arose under the act of 1916 (Comp. St. § 6336b [a]), which contained no provisions for determining gain or loss resulting from exchange of properties, but the court, after noting the provisions of the act of 1918 and the Revenue Acts of 1921 (Comp. St. § 6336⅛bb) and 1924 (Comp. St. § 6336⅛b [c]), felt justified in stating that "under these statutes it is conceded that plaintiff could not be required to pay income tax, the property received by him being without market value."

This case is authority for the proposition that a gain is not established, in the absence of proof that the property received in exchange had an exchangeable value; the theory being apparently that the property cannot be treated as "the equivalent of cash" unless it has a realizable market value. Safe Deposit & Trust Co. of Baltimore v. Miles (D. C.) 273 F. 822.

[2] If stock which has no market, and consequently no market value, other than that established by an appraisal of the assets, cannot be treated as the equivalent of cash for the purpose of determining profits, it is difficult to see on what principle it could be so treated for the purpose of establishing a loss. Section 202 (a), Comp. St. § 6336⅛ bb (a), requires the application of the same rule in determining either a loss or a gain.

The only result of the transfer of the assets by the petitioner to his corporation for all of its capital stock was to change the form or character of ownership in the assets. It left him no richer or no poorer. In order to establish his right to a deduction, he must bring his case within the terms of section 202(b). When the courts or the taxing authorities have resorted to sources of information other than actual sales, it has been done, I assume, for the purpose of finding a potential market value; that is, the price a purchaser desiring to buy would pay, and a seller desiring to sell would accept. See Holmes, Federal Taxes (6th Ed.) § 332, at page 602. Stock which has no intrinsic or actual value can have no potential market value. If this statute permitted the gain or loss to be determined with reference to the intrinsic or cash value of the property received in exchange, it might be possible to adopt zero as a valuation for the property received, but a *market* value of zero is a contradiction in terms. It is only another way of stating that the shares have no market value and, having no market value, they can have no cash equivalency.

[3] The plain intention of Congress was to provide a method of determining gain or loss where property is exchanged for other property. These provisions must govern. Under them there is no taxable gain and no deductible loss unless the property received in exchange has a value realizable in money's worth. See Regulations 45, art. 1563.

This construction of section 202 (b) is necessary to give effect to the words *"if any"* which the Congress saw fit to insert after the words "fair market value." Holmes, Federal Taxes, § 332, at page 597.

[4] It is now easy to see that the petitioner sustained a loss, but it does not necessarily follow that the loss can be applied to reduce his 1919 income.

Unless the property which he received in exchange meets the requirements of section 202 (b), it cannot be regarded as a closed transaction, but he must await the outcome of events before determining whether he has derived a profit or sustained a loss as a result of the exchange. If the property received in exchange cannot be treated as the equivalent of cash, for the reason that it has no fair market value, the exchange leaves the taxpayer where he was before the exchange.

I do not believe that a petitioner can maintain his right to a deduction under this section, resulting from an exchange of property, by showing that, at the time of the exchange, there was no market for, and no market value of, the property received in exchange.

I find and rule, therefore, that the petitioner is not entitled to recover in this proceeding. Defendant's motion for judgment is allowed, and plaintiff's requests for rulings are denied.