## LINCOLN BANK & TRUST CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5534.

Circuit Court of Appeals, Sixth Circuit.

June 11, 1931.

See, also, Massey v. Commissioner of Internal Revenue, 51 F.(2d) 76.

J. C. W. Beckham, Jr., and Elwood Hamilton, both of Louisville, Ky. (Woodward, Hamilton & Hobson, of Louisville, Ky., on the brief), for petitioners.

A. H. Conner, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and Stanley Suydam, all of Washington, D. C., on the brief), for respondent.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The petition for review in the above-entitled cause involves the question of taxable income arising from the acquisition of leases of the Southwestern Petroleum Company and the Cliff Petroleum Company by the Old Dominion Oil Company, and the issue of capital stock of the latter company to the taxpayer, as incident to such transaction. This question was fully covered by our decision in the case of R. V. Board v. Commissioner, 51 F.(2d) 73, this day delivered, and the order of the Board of Tax Appeals upon this issue is reversed upon the authority of that decision.

The next question presented involves profits said to have arisen from the purchase and resale of the properties of the Hopewell Petroleum Company. On February 21, 1919, Earl S. Gwyn, James R. Duffin, and V. J. Bulleit formed a syndicate to purchase the properties of the Hopewell Petroleum Company for $200,000 in cash, 200,000 shares of a company to be organized, which shares were to have or be given a trading value of 50 cents per share, and $60,000 of proceeds of the sale of oil, if found, thereafter to be pumped from the properties. Bulleit and his associates immediately organized the Belle Point Oil Company with an authorized capital stock of $1,000,000, of which $900,000 was to be delivered to Bulleit or, on his order, to others. The remaining $100,000 of the stock was to be sold as treasury stock and the proceeds of such sales, with advances from the syndicate, were to be used to complete the contract of purchase and provide operating capital. Two hundred thousand shares of the Belle Point Oil Company were transferred by the syndicate to the Hopewell Petroleum Company, leaving the syndicate in possession of 700,000 shares. Shortly thereafter approximately 547,000 shares were sold at a price slightly in excess of 50 cents per share. From the proceeds of these sales all previous advances of the syndicate members were returned, other syndicate expenses defrayed, and each member of the syndicate realized a cash profit of $14,400.15, which profit has been included, without objection, in the taxable income. However, there remained in the hands of the syndicate about 153,000 shares on July 31, 1919, when the Belle Point Oil Company consolidated with

the Old Dominion Oil Company. In this consolidation the taxpayer received one share of the stock of the Old Dominion Oil Company for each four shares of his proportionate interest in the surplus syndicate stock of the Belle Point Oil Company. He therefore received by reason of his syndicate holdings, 12,561¾ shares of the stock of the Old Dominion Oil Company. This closed the affairs of the syndicate.

Upon redetermination of the taxpayer's income tax for the year 1919, the Board of Tax Appeals placed a "fair market value" of 43.75 cents per share upon the stock of the Belle Point Oil Company held by the syndicate at the close of syndicate operations on July 31, 1919, which, added to the cash profit already referred to, brought the taxable income from this transaction to a total of $36,559.96. It was the taxpayer's and is now the petitioners' contention that the stock of the Belle Point Oil Company had no ascertainable market value which would bring the transaction within section 202 (b) of the Internal Revenue Act of 1918 (40 Stat. 1057). Obviously the Belle Point Oil Company stock had no such market value as of February 21, 1919, as would justify an attempt to assess the tax as of that date. O'Meara v. Commissioner, 34 F.(2d) 390, 395 (C. C. A. 10); Tsivoglou v. U. S., 27 F.(2d) 564 (D. C., Mass.), affirmed, Id., 31 F.(2d) 706 (C. C. A. 1). But it is equally clear that the Board made its finding of syndicate profits upon a valuation of the stock of the Belle Point Oil Company as at the close of syndicate operations. In so doing the Board took into consideration not only the sales which had already been made to the public, and the oral testimony of Gwyn himself, which was consistent with the Board's valuation, but also a valuation of $1.75 per share of Old Dominion Oil Company stock into which the shares of the Belle Point Oil Company were converted. We are unable to say that the evidence does not fully justify the valuation placed upon the latter shares, provided it was proper to value them for income tax purposes as of the date of the close of the syndicate operations on July 31, 1919. Cf. Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289.

■ In determining profit or loss from syndicate operations it is essential either that such operations be treated as partnership transactions, in which each member of the syndicate is regarded as having individually purchased or sold a proportionate share of the securities in which the syndicate dealt, or that the syndicate be given the status of an independent entity, the funds advanced by syndicate members being considered as the sole investment of the several members, as such, and the profits from syndicate operations being subject to income taxes only upon distribution, in cash or in kind, and then only after the transaction has been so far closed that the initial investment has been returned in full to the investor.

■ It is in this latter aspect that the syndicate operations were regarded by both the Board of Tax Appeals and the taxpayer, for otherwise it would have been necessary that the stock of the Belle Point Oil Company be given a per share cost basis, and that profits upon the various sales be estimated with respect to such basis, rather than computed on the net excess of receipts over disbursements, with no cost value whatever being assigned to the remaining syndicate shares. We express no opinion as to the propriety of this action, but simply accept it as correct in view of the attitude of both litigants. In this aspect it is clear that the syndicate operations were closed with the consolidation of the Belle Point Oil Company and the Old Dominion Oil Company, and that profits were to be computed as of that date by ascertaining the fair market value of the surplus syndicate shares, as well as by balancing cash receipts and disbursements. At the close of syndicate operations the taxpayer received in kind, in addition to the previous return of his cash investment and a cash profit theretofore realized, his proportion of the surplus shares of the Belle Point Oil Company stock, which shares carried, we think, a "fair market value." This marked the close of one business or investment venture and the beginning of another. It was proper that he be taxed not only upon cash profits realized, but also upon the cash equivalent of the profits represented by stock distributed in kind. The ruling of the Board of Tax Appeals to this effect is affirmed.

■ The petitioners also insist that the Board of Tax Appeals erred in placing a fair market value of $3,750 upon certain stock of the Marden-Orth-Hastings Company, received by the taxpayer during the year 1920 as compensation for services; and in refusing to allow losses on a bad debt of Edward Moore ($4,000 claimed in 1920 and $2,250 claimed in 1921), loss on an investment in Sandow Oil Company stock in 1921 ($1,000), and loss on an investment in Royhome Oil Company stock in 1921 ($185). On these

items it is enough to say that the evidence is insufficient to establish lack of a fair market value of the stock of the Marden-Orth-Hastings Company when it was received; to justify a finding that the debt of Edward Moore was ascertained to be worthless and charged off during the years in question; or to show that it, or the loss upon investment in the Sandow Oil Company or in the Royhome Oil Company, was sustained during the applicable year. "The burden of proof to establish a deductible loss and the amount of it, clearly, was upon the respondent," here the petitioner. Burnet v. Houston, 283 U. S. 223, 51 S. Ct. 413, 75 L. Ed. 991. Failing to sustain the burden of showing the Commissioner wrong, the assessment must stand. Upon these issues the order of the Board of Tax Appeals is affirmed. Cf. Niles Bement Pond Co. v. U. S., 281 U. S. 357, 361, 50 S. Ct. 251, 74 L. Ed. 901.

For the reasons above stated, this cause is remanded to the Board of Tax Appeals for redetermination of the tax upon principles consistent with the foregoing opinion.