WILD v. COMMISSIONER OF INTERNAL REVENUE.

No. 53.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1933.

hold shares and bonds of a company which owned real estate. The members promised to pay their subscriptions, which were of unequal amounts, as the manager might call; if they defaulted, the manager might advance the call, which was to be then treated as a loan. These funds the manager was to use to buy, and "manage," the shares and bonds of the realty company, and for whatever else it thought "advisable," putting the securities in its own name, if it chose, pledging them, voting upon them, and acting as shareholder. The syndicate was to last until the manager ended the venture at its pleasure, when it should distribute all the capital and profits, though it might make "partial distribution" earlier. Upon distribution the manager was first to take out its expenses, next repay the contributions to each member with six per cent., and divide the balance as profit, one part to itself and three to the members in proportion to their contributions.

The taxpayer was a contributor to the syndicate, and had got back his principal and interest before 1923; in 1923 and 1925 he received distributions of profits, which he returned as income. The manager did not, however, distribute all the profits made in those years, and the Commissioner assessed the taxpayer on the assumption that these were part of his income. The distribution had not been made with an eye to tax evasion. The taxpayer kept his books on a cash basis.

Lawrence A. Baker and Henry Ravenel, both of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John D. Foley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The question raised by this appeal is whether the earned, but undistributed, income of a member of two investment "syndicates" using contributions of its members to buy, hold and sell securities and land, is taxable. The taxpayer's position is that he need return only what is actually distributed by the "syndicate manager"; the Commissioner's that the syndicate was a partnership, and that its realized profits were taxable income of the members, though retained by the manager for future investment, or eventual distribution. The Board took the Commissioner's view, and the taxpayer appealed. We set out the substance of one agreement; the other is substantially like it. We take that known as the "Brighton Syndicate No. 1."

Sixteen individuals united in a contract, as parties of the first part, with a corporation, as party of the second. The corporation was to be the "manager," though it was also a subscriber. The purpose was to buy and

We have not to decide whether the syndicate was an "association" within section 2 (2) of the Revenue Act of 1921 (42 Stat. 227), or a trust or fiduciary agency under section 219, as defined by section 200 (2) (" 'fiduciary' means a guardian, trustee, * * * or any person acting in any fiduciary capacity for any person, trust or estate"). If it was either, profits not distributed were taxable against the association (section 230), or against the fiduciary (section 219 (a) (3); section 219 (c). All we have to decide is whether it was either a partnership, stricti juris, or such a joint venture as interposed no fiduciary to insulate the owners from direct taxation. It is true that the local law does not control in such a case. Though the syndicate be not a partnership by New York law, it still may be one under the revenue law; the converse was held in Burk-Waggoner Oil Ass'n v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183. Nevertheless, a partnership means "an ordinary partnership," as was declared on page 113 of 269 U. S.,

46 S. Ct. 49. Sugg v. Hopkins, 11 F.(2d) 517, 520 (C. C. A. 5). However, though the word is to be construed not by local law, but, we suppose, in the light of the common law and the law merchant, the decisions of the local forum may be taken as evidence of the general law, particularly when they are not contrary to anything found elsewhere.

■ The Uniform Partnership Law (see Consol. Laws N. Y. c. 39) does not help very much. Section 10 (1) defines a partnership as "An association of two or more persons to carry on as co-owners a business for profit," though mere joint ownership is not alone enough, even if profits be shared (section 11 (2). "Business" does indeed include every "trade, occupation or profession" (section 2), but the manager here was primarily only to collect the profits, in spite of his power to sell and reinvest. It does not appear that he used his power, but the case has not been presented on this theory, and we shall assume arguendo that he did and that the syndicate was in "business." If so, the division of profits may prima facie have made the venture a partnership (section 11 (4). Again, while the partners normally have "equal rights in the management and conduct of the partnership business" (section 40 (5), this is "subject to any agreement between them" (section 40). We need not say that there could not be a partnership in which the whole management was vested in the hands of one partner.

The statute is a codification; so far as not otherwise provided, the common law governs (section 5); it left much still open. The Court of Appeals of New York has at least twice had before it syndicates much like these (Jones v. Gould, 209 N. Y. 419, 103 N. E. 720; Byrnes v. Chase National Bank, 225 App. Div. 102, 232 N. Y. S. 224, affirmed 251 N. Y. 551, 168 N. E. 423), and held that they were not partnerships. The differences between those syndicates and that at bar are of no moment, except that each expressly provided that the subscribers should not be partners, which this does not. That clause may throw some light upon the subscribers' intent, but its absence is not enough to give an opposite color to a plan so nearly the same in all other respects. Indeed, it would be ineffective to prevent a partnership, if otherwise the court found one to exist. Ex parte Delhasse, 7 Ch. D. 511; Moore v. Davis, 11 Ch. D. 261; 1 Lindley, Partnership (5th Ed.) 29.

Copland v. Com'r, 41 F.(2d) 501 (C. C. A. 7), concerned a joint venture similar to this, though of few members; it was expressly held not to be a partnership. The agreement in Commissioner v. Olds, 60 F. (2d) 252 (C. C. A. 6), was quite different from that at bar, and the decision does not help us. We need not consider therefore whether we should have come to the same conclusion. Reynolds v. McMurray, 60 F.(2d) 843 (C. C. A. 10), is closer; the original joint adventure was between two, though one later assigned part of his share to a third, who was taxed upon profits which he had never received. The property consisted of oil leases which one member was to develop, taking the cost of development out of the joint profits. These were the income taxed; they were held to have enriched the taxpayer by discharging his liability to the member who advanced them. Had the taxpayer received the profits and paid the debt, there could have been no doubt, and the contract informally effected the same thing; at least the profits had not been merely impounded against future distribution. While we are not sure that we should have reached the same result, the gross distinction between that situation and this is pretty clear. An arrangement by which a number of persons put their property into the hands of one for its entire management, is certainly nearer to an association, or an associate trust. The line may be hard to draw, but the extremes are patently different. We do not believe that any court would, for example, hold the members of this syndicate liable as partners. That may not be a conclusive test, but it is not irrelevant; at least if a partnership means "an ordinary partnership." In Fleming v. Lay, 109 F. 952 (C. C. A. 6), while the manager had charge of the tugs, it was apparently only as to their allocation to different jobs. The owners did not merely contribute their property; they still managed and operated the tugs by their crews; and we understand that it was for this reason that the venture was treated as co-operative, and a partnership. Duffin v. Lucas, 55 F.(2d) 786, 793 (C. C. A. 6), contains a dictum to the contrary. The only question before the court was as to what profit Duffin had realized by distribution of certain shares, and the language was used arguendo in that connection. Whether the court would have applied it to such an arrangement as that before us, we are not sure; if so, we cannot agree. In Lincoln Bank & Trust Co. v. Commissioner, 51 F.(2d) 78, the same court had particularly reserved the same question.

It still remains theoretically possible that though **not a** partnership, the syndicate

made the members merely co-owners of property, managed by a common agent. That can hardly be its full measure. The manager was ·at least entitled to take title in his own name and was to have absolute control. There was no provision for the substitution of another by the member's choice; they were to be passive beneficiaries only. Such a scheme may ·be a trust; it was so defined by the appellate division in Byrnes v. Chase Nat. Bank, supra, 225 App. Div. 102, 108, 232 N. Y. S. 224, 230. If so, the manager was a "person acting in" a "fiduciary capacity".for' the members' property. We understand that "any kind of property held in trust" (section ·219 (a), Revenue Act 1921) includes any property held by a "fiduciary" as defined by section 200(2). The income was not taxable under section 218 (a).

 Nor can we regard the amendment of 1932 (Revenue Act 1932, § 1111 (3), 26 US CA § 4111 (3), as controlling. As new law, it does not affect to be retroactive, and perhaps would be invalid if it did. As authoritative interpretation of the act of another Congress, it cannot prevail. As evidence of the actual intent of that Congress, it is of slight consequence, not being a codification of ·contemporaneous construction.

Order reversed.