## COMMISSIONER OF INTERNAL REVENUE v. KAY MFG. CORPORATION.

### No. 366.

Circuit Court of Appeals, Second Circuit.

Aug. 5, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Lee A. Jackson, and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for petitioner.

Benjamin Mahler, of New York City, for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

There is no dispute as to the facts, all of which were stipulated. The taxpayer, Kay Manufacturing Corporation, is a Massachusetts corporation whose capital stock was owned by a New York corporation of the same name. During the taxable year in suit the taxpayer distributed all its assets in complete liquidation, and was thereafter dissolved. Such distribution was a transaction upon which no gain or loss to the parent corporation is recognized under the provisions of section 112(b) (6) of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev.Acts, page 856. At the date of distribution the taxpayer's books showed an earned surplus of $47,904.23 accumulated since its incorporation in 1933. The question presented is whether such distribution of earned surplus entitles the taxpayer to a dividends paid credit under section 27 (f), 26 U.S.C.A. Int.Rev.Acts, page 838, for the purpose of computing the surtax on undistributed profits imposed by section 14 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 823. The Board allowed the credit on the authority of its own prior decision in Credit Alliance Corp. v. Commissioner, 42 B.T.A. 1020. This case was affirmed by the Circuit Court of Appeals of the Fourth Circuit on July 21, 1941, 122 F.2d 361.

Section 14(b) lays upon the net income of every corporation a graduated surtax equal to the sum of stated percentages of the portion of the "undistributed net income" which is in excess of certain percentages of the "adjusted net income". The latter term is defined in section 14(a) (1) and section 14(a) (2) provides that "undistributed net income" means "the adjusted net income minus the sum of the dividends paid credit provided in section 27 and" another credit not relevant in the case at bar. Turning to section 27 we find that paragraph (a) provides that "the dividends paid credit shall be the amount of dividends paid during the taxable year." Paragraphs (f) and (h) read as follows:

"(f) Distributions in Liquidation. In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid.

\* \* \*

"(h) Nontaxable Distributions. If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part."

Literally the taxpayer's distribution of earned surplus fulfills the provisions of section 27(f). The commissioner contends that it is modified by paragraph (h). We do not think so. The very purpose of paragraph (f) was to provide that the liquidating corporation might treat as a "taxable dividend paid" a distribution of accumulated earnings which would not be considered a dividend in the hands of the distributee, but a return of his capital investment. Hellmich v. Hellman, 276 U.S.

233, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379. This rule was expressed in 115(c) of the Act, 26 U.S.C.A. Int.Rev.Acts, page 868. Having made this specific provision in favor of the liquidating corporation it would be strange indeed if Congress intended to withdraw by paragraph (h) the benefit just granted by paragraph (f). As already shown, a distribution in liquidation of accumulated earnings is never "a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title"; hence to read those words in paragraph (h) as modifying the language of paragraph (f) would deprive the latter of all utility. In our opinion the Board and the Fourth Circuit rightly refused to do so in the Credit Alliance case. See, contra, Centennial Oil Co. v. Thomas, 5 Cir., 109 F.2d 359, 361 with dissenting opinion by Judge Hutcheson.

 The commissioner further contends that the words "properly chargeable to the earnings or profits" in section 27 (f) should be construed to exclude a tax-free distribution. The argument is that the statutory scheme was to subject corporate earnings to surtaxes either in corporate or individual hands by laying a surtax on such of those earnings as were not distributed as dividends. It is conceded, however, that the correlation between credit to the corporation and taxability of the distribution as a dividend is not perfect in the case of liquidation distributions, since they are taxable to the distributee only as capital gains. But the commissioner urges that the statutory scheme contemplates taxability in some form, if the corporation is to have a credit, and that section 27(f) must be construed so as to be consistent with it. The argument is buttressed by reference to section 115(h). As this deals only with stock or securities we are unable to see its relevance. It is true that in the Revenue Act of 1938 section 115(h), 26 U.S.C.A. Int. Rev.Acts, page 1057, was broadened to include money or property, but this is of slight consequence in interpreting the earlier law. See Wild v. Commissioner, 2 Cir., 62 F.2d 777, 780. Section 27(f) deals with liquidation distributions from the standpoint of the liquidating corporation rather than the distributee. When it speaks of part of such distribution as being "properly chargeable" to accumulated earnings, we agree with the Board that the term was used in its ordinary meaning to distinguish between capital and earnings and without reference to whether the earnings would be taxable in the hands of the distributee. It should not be overlooked that the Revenue Act of 1936 was intended not only to raise revenue but also to encourage the simplification of corporate structures. See the President's message to Congress, H.R. No. 1681, 74th Cong. 1st sess. This purpose was carried into effect by section 27(f) as well as by section 112, 26 U.S.C.A. Int.Rev.Acts, page 855. In so far as Article 27(f) of Treasury Regulations 94 purports to establish a rule contrary to the construction of the section we have approved, we agree with the Fourth Circuit that it is unauthorized.

In our opinion the decision of the Board was correct. It is affirmed.