**FOSTER et al. v. UNITED STATES.***

No. 42642.

Court of Claims.

Dec. 7, 1936.

*For supplemental opinion, see 18 F.Supp.

Hugh C. Bickford, of Washington, D. C. (C. Clifton Owens, of Washington, D. C., on the brief), for plaintiffs.

George H. Foster, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiffs, claiming that the decedent in her lifetime overpaid her taxes for the year 1930, bring this suit to recover the alleged overpayment, being $740.60 together with interest from March 12, 1931. There is no dispute as to the facts.

For the calendar year 1930 the decedent filed a return stating her taxable income to be $29,697.29 and paid the tax thereon. Included in decedent's reported income was the sum of $23,250 received from the Foster Lumber Company as dividends on 155 shares of stock of that company owned by her. This was out of a

194

dividend of $225,000 declared on February 11, 1930.

Plaintiffs claim that $14,754.22 included in the dividend of $23,250 was paid by the company out of surplus accumulated prior to March 1, 1913, and hence was exempt from tax. The Commissioner of Internal Revenue rejected this claim and the decedent, having filed a claim for refund which was also denied, brought this suit.

The Foster Lumber Company was organized in 1896 and up to 1929 its capital stock consisted of 2,000 shares of the par value of $100 per share. On March 1, 1913, its earnings and surplus were in excess of $3,725,000. On October 10, 1929, having determined to retire 500 shares of the capital stock, the company paid in cash to its stockholders $1,025,000 and 500 shares of the stock were surrendered to the company for cancellation. Of this sum $975,000 was charged to surplus and $50,000 was charged to capital stock.

The plaintiffs rely on section 115 (b) of the Revenue Act of 1928, 45 Stat. 822 (26 U.S.C.A. § 115 and note), which provides that: "For the purposes of this Act [the Revenue Act of 1934] every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits."

It is contended that this provision is controlling here and that consequently the distribution made on October 10, 1929, must be treated as made out of earnings or profits accumulated since February 28, 1913, to the extent thereof. As the amount of such earnings remaining undistributed at that time was only $330,578.98, it is plain that if this rule is applied the distribution would more than absorb all of this amount, leaving nothing to be carried over to the next year.

In the interval from October 10, 1929, to February 11, 1930, when $225,000 was distributed, the corporation accumulated $82,758.17, and plaintiffs claim that this was all which was distributed on the date last mentioned out of earnings and profits accumulated since February 28, 1913. If this is correct, the remainder of the dividend, $142,241.83, was not subject to income tax when it came into the hands of the stockholders and the Commissioner erred in holding to the contrary and in refusing to allow the decedent's claim for a proportionate reduction in her income tax for that year.

The defendant, on the other hand, contends that the distribution made in 1929 constituted an exception to the general rule expressed in section 115 (b) and is covered by a provision in section 115 (c), 45 Stat. 822 (26 U.S.C.A. § 115 note) which reads as follows: "In the case of amounts distributed in partial liquidation * * * the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation."

It will be seen that the ultimate issue between the parties is whether the distribution of 1929 was "properly chargeable to capital account."

In determining the question thus presented the nature of the distribution must first be considered.

Clearly the distribution was not a dividend, either in the special sense that the word is used in the statute as defined in section 115 (a), 26 U.S.C.A. § 115 (a) and note, or in its meaning as generally used, which is somewhat broader. The definition set out in the statute was evidently inserted to make sure that there could be no claim that a distribution made out of profits was not a dividend. The distinction between a dividend and such a distribution as is made in the case before us is quite plain. When a dividend is made, the stockholder receives something but pays nothing. In the case at bar, the stockholder received money from the corporation but gave what may be considered as full value for what she received. Neither the stockholder nor the corporation had gained by the transaction. We think that, if profits were distributed, as is now claimed by the plaintiffs, the stockholder would not have been required to pay for what she received. What the corporation turned over to the stockholders was the value of their stock which appears to be the same as on March 1, 1913. This is treated by the law as a basis of the determination of gain or loss to the stockholder in the transaction, and we think it is so treated on the ground that earnings or profits accumulated prior to that date constituted for tax purposes the capital of the taxpayer. When the stockholders obtained the March 1, 1913, value of their stock, it was the realization of

capital, and was properly chargeable to capital account.

A consideration of the purpose of section 115 (c) of the act of 1928 and the reports made by the committees of the House and Senate when it first became a part of the revenue law supports the view above expressed. As the law originally stood, the plan devised in the case before us could be carried out so that the earnings and profits accumulated since 1913 would be distributed tax free. The general provisions of section 115 (b), which were in the former act, would have required the distribution to be treated as made out of earnings or profits accumulated after February 28, 1913, and the distribution would be properly chargeable to surplus and paid out of such profits with the result that the distribution made October 10, 1929, absorbed all of the earnings and profits to that date. Obviously this would enable the stockholders to escape taxation although they had received earnings and profits which had accumulated since February 28, 1913. To prevent this avoidance of taxes, what is now section 115 (c) of the Revenue Act of 1928 was inserted in the Revenue Act of 1924 as section 201 (c), 43 Stat. 254. This new provision stated an exception to section 115 (b); namely, a case where the distribution was "properly chargeable to capital account." When the 1924 act was reported, the reports on the bill made by both the Senate and House committees contained the following statement: "The theory of liquidating dividends is extended to distributions in partial liquidation. If a corporation retires a portion of its capital stock, the transaction is treated, from the point of view of the stockholder, as a sale of his stock. If the corporation distributes an amount in partial retirement of its capital stock, the amount thereof is *to be considered as a return of capital,* and taxable only if, as, and to the extent that it exceeds the basis of the stock." [Italics ours.]

In the case before us, the corporation distributed an amount in partial retirement of its capital stock and, as stated in the report, this is "considered as a return of capital." Money paid out in making a return of capital is "properly chargeable to capital account." It is true that the reports presented the matter "from the point of view of the stockholder," but the principle is the same when applied to the corporation. The distribution came within the provisions of section 115 (c), being properly chargeable to capital account, and consequently was not to be considered as a distribution of profits under section 115 (b).

If the distribution of 1929 was charged to capital account, as it should be according to what we have held above, the profits which had accrued since 1913 and then on hand would not be depleted thereby. When the 1930 distribution was made, then, under the provisions of section 115 (b), it would be paid out of these profits to the extent thereof. When the decedent received her share of these profits, the Commissioner rightly held that she was taxable thereon.

The petition must be dismissed and it is so ordered.