**HELVERING, Commissioner of Internal Revenue, v. CREDIT ALLIANCE CORPORATION.**

No. 4801.

Circuit Court of Appeals, Fourth Circuit.

July 21, 1941.

Writ of Certiorari Granted Nov. 24, 1941.

See — U.S. —, 62 S.Ct. 301, 86 L.Ed. —.

362

Arthur A. Armstrong, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Lee A. Jackson, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Newell W. Ellison, of Washington, D. C. (Jack J. Levinson, and Christopher S. Sargent, both of New York City, on the brief), for respondent.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

In the course of a complete liquidation in 1936, the Credit Alliance Corporation, the taxpayer, made a distribution to the Commercial Credit Company, its parent corporation, of earnings and profits accrued since February 28, 1913. No gain or loss resulted to the parent corporation from the distribution because of the provisions of Section 112(b) (6) of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 856. The question in the pending case is whether the taxpayer is entitled, by reason of this liquidating distribution, to a dividends paid credit under Section 27(f) of that Act, in the computation of the surtax on undistributed profits provided by Section 14 of that Act, 26 U. S.C.A. Int.Rev.Acts, pages 823, 838.

The facts as found by the Board of Tax Appeals are as follows: Credit Alliance

Corporation, the taxpayer, was organized in July, 1922 under the law of New York and dissolved in July, 1937. During its existence it was actively engaged in business. In 1930 the Commercial Credit Company, a Delaware corporation, acquired more than 80% of the taxpayer's outstanding capital stock and by December 1, 1936, owned 526,238 shares out of 528,186 shares outstanding, or 99.63% thereof. Its holding continued the same until cancellation of all stock, which took place beginning in 1936. In that year liquidation of the taxpayer was decided upon, in order to simplify the corporate structure in accordance with Section 112(b) (6), Revenue Act of 1936; and on December 1, 1936, the stockholders in special meeting, and later on the same day the directors, resolved to liquidate the corporation completely within three years, to distribute in liquidation property equivalent to $1.80 per share, to reduce the capital from $4,225,488 to $528,186, reducing the stated value of stock from $8 per share to $1 per share, and to distribute $7 per share in liquidation, all on December 10, 1936, to stockholders of record December 3, 1936. The resolutions were carried out, and out of earned surplus there was distributed to the stockholders cash and property, all of the value of $950,734.80. Thereof the Commercial Credit Company received $947,228.40. The earned surplus account represented only earnings and profits accumulated since February 28, 1913; there was no paid-in surplus. On the same day the taxpayer, from assets made available by the reduction of capital from $4,225,488 to $528,186, distributed cash and property all of the value of $3,697,302, of which the Commercial Credit Company received $3,683,666. Further distributions were made in 1937 and final distribution was made and liquidation completed on November 30, 1938. Certification of dissolution had been filed in the office of the Secretary of State of New York on July 6, 1937, and the corporation legally dissolved on that date. The liquidation complied with the provisions of Section 112(b) (6) Revenue Act of 1936. The Commercial Credit Company did not distribute in 1936 to its stockholders any of the distribution received by it from the petitioner on December 10, 1936, and did not apportion or allocate any part thereof to the petitioner.

In its income tax return for 1936 the taxpayer claimed a dividends paid credit under Sections 14 and 27 of the Revenue Act of 1936 for the full amount of that year's distribution out of earnings and profits, that is, $950,734.80. The Commissioner allowed the credit to the extent of the amount distributed to minority stockholders, but disallowed it to the extent of $947,228.40, the amount distributed to the parent company. This resulted in the determination of a deficiency of $121,814.49 in taxpayer's undistributed profits tax for 1936. The taxpayer filed a petition for redetermination, and the Board of Tax Appeals held that there was no deficiency.

Section 14(b) of the Revenue Act of 1936 imposes a surtax at graduated rates upon the undistributed profits of corporations. The tax is computed on such portions of the "undistributed net income" as are in excess of certain percentages of the "adjusted net income". The latter phrase is defined as net income less normal income tax and certain specified credits. The phrase "undistributed net income" is defined as "the adjusted net income minus the sum of the dividends paid credit provided in section 27", and another credit which has no bearing on this case.

We are concerned here with whether the earnings and profits distributed as aforesaid by the taxpayer to its parent corporation entitled the taxpayer to a dividends paid credit under the Act. Section 27(a) defines the dividends paid credit as "the amount of dividends paid during the taxable year".

Section 27(f) is as follows: "(f) Distributions in Liquidation. In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid."

On its face this section seems to support the claim of the taxpayer to a dividends paid credit equal to the amount distributed. But the Commissioner contends that the section is not applicable for two main reasons: First, it is said that Section 27(f) is modified and limited by Section 27(h) to situations in which the distribution is taxable in the hands of the distributee, and since under the provisions of Section 112(b) (6), no taxable gain was recognized upon the receipt by the parent corporation of the property distributed in the pending case, the taxpayer was not entitled to dividends paid credit for that distribution.

Section 27(h) and Section 112(b) (6) are as follows:

"(h) Nontaxable Distributions. If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part."

"§ 112.   Recognition of Gain or Loss
\*     \*     \*     \*     \*

"(b) Exchanges solely in kind
\*     \*     \*     \*     \*

"(6) Property received by corporation on complete liquidation of another. No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. * * *"

The government contends that Section 27(f) must be construed in harmony with the general purpose of the Act to reach undistributed profits of a corporation by taxing them in its hands unless they are voluntarily distributed to the shareholders and become income in their hands subject to taxation; and that when Section 27(f) is so interpreted, it does not cover a tax-free distribution from one corporation to another which does not involve a distribution of earnings for tax purposes.

■ This contention of the Commissioner met with the approval of the majority of the court in Centennial Oil Co. v. Thomas, 5 Cir., 109 F.2d 359, 361; but it was pointed out in the dissenting opinion that if effect is given to all of the language of both subsections, it will be seen that Section 27(h) does not modify or limit Section 27(f). In both sections the term "dividends paid credit" occurs. Section 27(f) expressly provides that a liquidating distribution of earnings or profits shall be "treated as a taxable dividend paid", and hence such a distribution cannot be treated as a nontaxable distribution as to which, under Section 27(h), no dividends paid credit is allowed. In the pending case the Board of Tax Appeals followed the interpretation of the dissenting opinion. The Board held that Section 27(h) is the more general and Section 27(f) the more specific provision, and that Section 27(f) should therefore control in the case of a liquidating distribution, under the canon of statutory interpretation approved in United States v. Chase, 135 U.S. 255, 260, 10

S.Ct. 756, 34 L.Ed. 117 and Rodgers v. United States, 185 U.S. 83, 22 S.Ct. 582, 46 L.Ed. 816. Ordinarily a liquidating distribution is not considered a dividend; Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379; M. E. Blatt Co. v. United States, 305 U.S. 267, 59 S.Ct. 186, 83 L.Ed. 167; but, by virtue of Section 27(f), a liquidating distribution is to be treated not only as a dividend but as a taxable dividend.

■ Confining ourselves for the moment to a comparison of these sections of the Act, we find we are in accord with the Board's interpretation. It gives effect to the coordinate purpose of the Act manifested in this section and also in Section 112(b) (6) to encourage the simplification of corporate structures by liquidation. The desirability of such a simplification of corporate structures was stressed in a message of the President to the Congress on June 19, 1935, H.R.Rep. No. 1681, 74th Cong., 1st Sess., p. 4; and it was emphasized in the debates in Congress during the passage of the Revenue Act of 1936 by Senator George for the Senate Finance Committee on the floor of the Senate, and by Representative Doughton for the Ways and Means Committee on the floor of the House. See 80 Congressional Record 8799, 10270; Seidman, Legislative History of Federal Income Tax Laws, pp. 242, 243. Moreover, as we shall see, the Board's interpretation of Section 27(f) is not inconsistent with the Congressional intent to tax undistributed corporate profits.

The Commissioner in the pending case places special reliance on the second reason above referred to. His argument is that a liquidating distribution of profits by a subsidiary to a parent corporation does not amount to a distribution "which is properly chargeable to the earnings or profits accumulated after February 28, 1913", in the words of Section 27(f), because the property in the hands of the distributee still retains its character as earnings or profits as distinguished from capital. In other words, no distribution of profits has taken place. If, as in this case, no such taxable gain is recognized in the transaction, it is of obvious advantage to the government to distinguish a distribution from one entity to another in the same corporate structure from a distribution by a corporation to individual stockholders whose receipt of the property would be subject to an income tax. The argument finds

its basis in the rule laid down in Commissioner v. Sansome, 2 Cir., 60 F.2d 931, that if an intercorporate transfer of earnings and profits results in no recognition of profit or loss to the distributee corporation, they remain earnings or profits, and do not become capital in its hands. In other words, a distribution of earnings in a tax-free transfer by a subsidiary to a parent does not turn the earnings into capital. See, also, Murchison's Estate v. Commissioner, 5 Cir., 76 F.2d 641; Baker v. Commissioner, 2 Cir., 80 F.2d 813.

This principle, however, does not necessarily lead to the Commissioner's conclusion. It is obvious that Congress may have used the term "earnings or profits" in Section 27(f) in its customary sense, so as to provide that a distribution thereof in liquidation, as distinguished from a distribution of capital, should give rise to a dividends paid credit, and at the same time have provided in Section 112(b) (6) that no gain or loss should be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. Indeed these sections read together adhere to the principle of Commissioner v. Sansome, supra, for they recognize that the property distributed remains in substantially the same hands and that no actual gain or loss has been realized in the transaction. Furthermore, if this interpretation is given, an obstacle to the simplification of corporate structures desired by Congress is removed.

▓▓ We think that the term "earnings or profits" was used in Section 27(f) to exclude from its purview a distribution of capital. We are of opinion, also, that the treatment of the distribution in this case as a taxable dividend paid will not conflict with the purpose of Congress to impose a surtax upon undistributed corporate profits. It is true that a distribution of the property will relieve the taxpayer, the subsidiary corporation, from the payment of an undistributed profits tax, and the receipt of the property by the parent corporation will not require the imposition of a tax upon it for a gain received; but it is not true that the distributee will be under no liability for an undistributed profits tax upon the profit received if it remains undistributed in its hands. The distributor, having distributed the property, is free from the undistribu-

ted profits tax; the distributee, having received that which in another capacity it already possessed, is not required to pay a tax upon its formal receipt; but there is nothing in the Act which says that the distributee is not subject to a tax upon undistributed profits if it persists in the retention of property which, in its hands as in the hands of the former holder, retains its character as undivided profits. This interpretation has the undoubted advantage, that it gives to Sections 27(f) and 27(h) their normal meaning, and at the same time gives effect to the underlying purposes of the Act to tax undistributed corporate profits and also to facilitate and encourage the simplification of corporate structures.

Having reached this conclusion, we have no need to pursue throughout its tortuous length the entire argument advanced by the Commissioner to show that Section 27(f) should not be given the meaning which its language would ordinarily convey. The Commissioner's argument refers also to Section 115(h) of the Act, 26 U.S.C.A. Int.Rev.Acts, page 870, which provides that a distribution to a distributee by a corporation of its stock or securities, or stock or securities in another corporation, shall not be considered a distribution of corporate earnings or profits if no gain to the distributee from the receipt of such stock or securities was recognized by law. It is said that this section is an express legislative recognition of the principle of Commissioner v. Sansome, supra, as indeed it is,[1] and hence a similar restriction, although not expressed, should be implied in Section 27(f) so that only those liquidating distributions which give rise to taxable gains in the hands of the distributee should be treated as taxable dividends paid.

In answer to this argument it is sufficient to say that the government adds no strength to its position by pointing out that Section 115(h) of the Act of 1936 also involves a recognition of the principle of the Sansome case already considered above. Whether the same result would be reached under Section 115(h) of the Act of 1938, which adds tax-free distributions of "property or money" to the category of transactions not to be considered as distributions of earnings or profits, we have no occasion now to consider. The reference to the transfer or exchange of "property" in

---

[1] See Report of Senate Finance Committee, S.R. No. 2156, 74th Cong., 2nd Sess., p. 19; Seidman, Legislative History of Federal Income Tax Laws, p. 250.

Article 115(h) of Treasury Regulations 94, promulgated under the Revenue Act of 1936, was obviously unauthorized if it was intended as an enlargement of the scope of the corresponding section of the act.

The government also refers, without avail to Article 27(f) of Treasury Regulations 94, which, without legislative sanction, authorizes a distributee in liquidation to allocate or transfer a dividends paid credit earned by it under the Act to its distributor. Indeed this regulation serves to indicate that the Treasury's interpretation of Section 27(f) imposes so unreasonable a burden on the distributor in liquidation that some affirmative action to alleviate the consequences, at least in part, was required.

Our conclusion is that the decision of the Board of Tax Appeals should be affirmed.