**FOWLER BROS. & COX, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9459.

Circuit Court of Appeals, Sixth Circuit.

Nov. 29, 1943.

Scott P. Crampton, of Washington, D. C. (Geo. E. H. Goodner and Scott . P. Crampton, all of Washington, D. C., on the brief), for petitioner.

Newton K. Fox, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, and William A. Clineburg, all of Washington, D. C., on the brief), for respondent.

. Before HICKS, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Petitioner appeals from the decision of the Board of Tax Appeals (now the Tax Court of the United States), which denied deductions claimed on income tax return for a bad debt, payment of salaries, and dividends.

### Deduction for Bad Debt

The alleged worthless debt consisted of a deposit in a closed bank; but petitioner owed to the bank, on promissory note, at least as much as the deposit. Petitioner for several years was attempting to offset the note by the deposit, but up to and including the tax year, the determination of the question was in abeyance. Petitioner, however, charged the deposit off, in a subsequent year, as a bad debt ascertained in the tax year of 1937. Thereafter, petitioner dissolved and transferred its assets and liabilities to a successor corporation, with a similar name and, apparently, similar officers and stockholders. But at that time, the matter of the offset of the deposit against the note, was still undecided. Some years afterward, the successor corporation was successful in securing the offset.

The Board found that the debt was not worthless in 1937. The fact that the deposit was charged off in 1937 upon the advice of attorneys that they did not think petitioner would ever get the offset, is not conclusive. The burden is on the taxpayer to show that the debt was worthless and ascertained to be worthless in the taxable year. There was no evidence as to the condition of the bank in question except that it closed; that it commenced to liquidate its indebtedness; that it was later reorganized; and that it did not attempt to collect on petitioner's note by legal proceedings. From the foregoing, it can not be held that petitioner overcame the presumption of correctness which attaches to the Commissioner's findings, or that the evidence warrants a reversal of the Board's decision that petitioner is not entitled to deduction for a bad debt.

### Deduction for Salaries Paid

It appears that during 1937, no salaries were paid and the taxpayer took no deduction for payment thereof in its 1937 tax return. On December 23, 1938, it was determined that the president and the secretary-treasurer of the company should be paid certain sums for services which they had rendered in 1937 and 1938, and on the same date, these amounts were paid. Of these amounts, $3,600 constituted remuneration for services during 1937. The claim for deduction made in a subsequent year was denied for the reason that petitioner's books were kept on a cash receipts and disbursements basis; that the return filed for 1937 indicated income reported on that basis; and that no payments of compensation were actually made during that taxable year. Petitioner claims that it is entitled to the deduction on an accrual basis. It appears that from 1920 until 1932, petitioner was on the accrual basis and rendered income tax returns in accordance therewith. Between 1933 and 1937, inclusive, petitioner made returns on a cash basis, and in answer to a question in its returns, it stated that it was on the cash basis; and its return for the taxable year in question was on such basis. It is claimed by petitioner, however, that it had never secured the right to change from the accrual basis to the cash basis by permission of the Commissioner of Internal Revenue; that its returns on the cash basis were mistakenly made and unauthorized; and that, therefore, it is entitled to the deduction on the accrual basis. The Commissioner held that in spite of petitioner's failure to secure permission to change from the accrual basis to the cash basis, nevertheless, such permission and consent were implied from the Commissioner's acceptance of the changed method of reporting.

In view of the foregoing, and on the ground that the details of the return in question indicated that petitioner's state-

ment that it kept its accounts on a cash basis was correct, the Board found as a fact that petitioner's accounts were kept on such basis. As to the contention that, according to the requirement, after a taxpayer has elected to use a method of accounting in income tax, such method must be followed in returns for subsequent years, unless permission is granted by the Commissioner to change to another method, it is held that such requirement may be satisfied by the Commissioner's acceptance of returns which give notice to him that the method originally adopted has been changed; and the situation then stands as though the Commissioner had given express permission to allow the change in method of accounting. S. Rossin & Sons, Inc., v. Commissioner, 2 Cir., 113 F.2d 652. The Board's finding that petitioner kept its accounts on a cash basis in the taxable year of 1937, and its denial of deduction for payment of the salaries in question, are sustained.

### Deduction for Dividends Paid

On December 31, 1936, petitioner had surplus earnings of $55,684.36, and during 1937 made a distribution of $10,000 to its stockholders. Dividends were authorized and paid from 1932 to 1938. On such occasions, the stock certificates were surrendered by the stockholders and canceled, and new certificates of the amount of par value of the stock, after deducting the amount distributed, were issued. As a result, the par value of the outstanding stock had been reduced from $200,000 in 1932, to $32,572.-50 in December, 1938.

It is conceded that petitioner corporation was in liquidation after 1932, and that it distributed the fund of $10,000 in liquidation, in 1937. In making this distribution, petitioner called in all the stock; distributed a pro rata amount per share; canceled stock at par value to the extent of the distribution; and issued to the stockholders, new shares in the amount of the par value of the stock less the amount of the distribution. This was a distribution in liquidation, in partial retirement of capital stock, and as such, was properly chargeable to capital account.

Petitioner claims a dividends paid credit for the distribution of $10,000 in 1937, on the ground that, by statute, the dividends paid credit shall be the amount of dividends paid during the taxable year; that a dividend is defined as any distribution made

out of earnings and profits accumulated after February 28, 1913, or accumulated in the taxable year; and that there is a conclusive presumption that every distribution is made out of the earnings or profits, to the extent thereof and from the most recently accumulated earnings or profits. Sections 27(a) and 115(a), (b), of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, pages 837, 868. The Commissioner denied the deduction and his holding was sustained by the Board.

Section 27(h) provides that if any distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of the stockholders, no dividends paid credit shall be allowed with respect to such distribution. Section 115(c) sets forth that the part of such a distribution, which is properly chargeable to capital account, shall not be considered a distribution of earnings or profits; and such limitation refers to the treatment of a distribution of earnings or profits in the hands of the distributees.

Section 27(f) provides that, in the case of amounts distributed in liquidation, the part of such distribution which is properly chargeable to the earnings or profits shall, for the purpose of computing the dividends paid credit, be treated as a taxable dividend paid. Applying Sections 27(h) and 115(c), in so far as stock was canceled, the distribution in question, in the hands of the stockholders was properly chargeable to capital account. Amounts distributed in retirement of capital stock, equal to the par value at which the liquidated stock is carried on the corporate books, are considered a return of capital, from the standpoint of both stockholder and corporation; and such distributions are properly chargeable to capital account. Foster v. United States, 17 F.Supp. 191, 84 Ct.Cl. 193; see also, Helvering v. Jarvis, 4 Cir., 123 F.2d 742. The distribution was a return of capital to the stockholders and was not to be considered a distribution of earnings or profits. It was, therefore, not a distribution of earnings in the hands of the stockholders, and they would not be taxable thereon. Since the dividends were not taxable to the stockholders, no dividends paid credit would be allowable under Section 27(h).

But it is contended by petitioner that under the provisions of Sections 115(a) and (b), dividends are defined as any distribution made by a corporation to stock-

holders, whether in money or other property; and that it is presumed that every distribution is made out of the earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. It is argued that, since under Section 115(b) all distributions are considered as made out of earnings or profits, the distribution in this case must be so considered and therefore, under Section 27(f) such a distribution—being properly chargeable to earnings or profits—should be treated as a taxable dividend paid in computing the dividends paid credit. If all distributions are presumed to be made out of earnings or profits, and are to be treated as taxable dividends paid, petitioner is entitled to the claimed credit in this case, under Section 27(f). However, there are certain exceptions to such presumption, governing distributions and their treatment as taxable dividends paid for purposes of computing the dividends paid credit.

Section 115(h) of the Revenue Act of 1936, provides that a distribution of stock or securities in another corporation, shall not be considered a distribution of earnings if no gain to the distributee from the receipt of such stock or securities was recognized by law, or if the distribution was not subject to tax in his hands, because it did not constitute income within the meaning of the Sixteenth Amendment; and it was held that, on such a distribution, the corporation was not entitled to a dividends paid credit. Reed Drug Co. v. Commissioner, 6 Cir., 130 F.2d 288.

Petitioner, however, relies on Helvering v. Credit Alliance Corp., 316 U.S. 107, 62 S.Ct. 989, 86 L.Ed. 1307, in which it was held that a distribution in liquidation of earnings or profits to a parent corporation was entitled to a dividends paid credit, although the distribution was not taxable in the hands of the distributee; and that Section 27(h), denying such credit for any distribution not taxable in the hands of stockholders, was inapplicable. The reason that the distribution in that case was not taxable in the hands of the parent corporation was because, by the provisions of Section 112(b) (6), 26 U.S.C.A. Int.Rev. Acts, page 855, no gain or loss is recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. The ratio decidendi was that Section 27(f) applied in so far as the distribution was properly chargeable to earnings, and that the pro-

visions of the section clearly commanded that for the purposes of computing the dividends paid credit, such distribution should be treated as a taxable dividend paid—whether, in fact, it was or not.

Sustaining the construction, as revealed in the foregoing cases, was the legislative history disclosing the intention to simplify corporate structures, not inconsistent with the intention to tax undistributed corporate profits. Helvering v. Credit Alliance Corp., 4 Cir., 122 F.2d 361, 364. See, also, dissenting opinion of Hutcheson, J., in Centennial Oil Co. v. Thomas, 5 Cir., 109 F.2d 359. "It should not be overlooked that the Revenue Act of 1936 was intended not only to raise revenue but also to encourage the simplification of corporate structures." Commissioner v. Kay Mfg. Corp., 2 Cir., 122 F.2d 443, 445.

In addition to the construction based on legislative intent, in the Credit Alliance case, it was held that Section 27(h) did not apply to take away the credit given by Section 27(f); that Section 27(h) is the more general, and Section 27(f), the more specific; and that, therefore, Section 27(f) should control in the case of a liquidating distribution. 316 U.S. 107, 111, 62 S.Ct. 989, 86 L.Ed. 1307; 4 Cir., 122 F.2d 361, 364.

But if, for any reason, Section 27(f) were not applicable to permit credit in case of a distribution in liquidation, then Section 27(h) would control, in denying such credit. In the controversy before us, the distribution resulted in a cancellation of stock and a return of capital to the stockholders. They were not taxed thereon, and it has never been supposed or suggested by petitioner, the Government, or the Board, that the distribution was taxable to the distributees. It was not properly chargeable to earnings or profits, but to capital account; and although distributions properly chargeable to earnings are to be treated, in computing the dividends paid credit, as taxable dividends paid—whether they are or not—there is no provision for treating distributions which are not chargeable to earnings as taxable dividends paid, under any circumstances.

 Section 27(f), providing that in the computation of a dividends paid credit, distributions properly chargeable to earnings are to be considered taxable dividends paid, must be viewed as excluding consideration of a return of capital as a

taxable dividend paid, in computing such credit. The statute provides that the dividends paid credit shall be the amount of dividends paid during the taxable year. Section 27(a). The part of the taxable dividends used in computing the dividends paid credit in case of distribution in liquidation, is stated to be the part that is properly chargeable to earnings and profits. Section 27(f). There is no provision for considering as a dividends paid credit any part of a distribution in liquidation except that chargeable to earnings or profits. "When in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment," the rule of statutory construction with regard to express mention and implied exclusion, is pertinent, and the maxim, expressio unius est exclusio alterius, applies. Ford v. United States, 273 U.S. 593, 611, 47 S.Ct. 531, 537, 71 L. Ed. 793. The express singling out of that part of a liquidating distribution which is properly chargeable to earnings or profits, as being entitled to a dividends paid credit, indicates legislative intention that the part of liquidating distribution chargeable to capital account should not be entitled to such credit. "We think that the term 'earnings or profits' was used in Section 27(f) to exclude from its purview a distribution of capital." Helvering v. Credit Alliance Corp., 4 Cir., 122 F.2d 361, 365.

■ In considering Section 27(f), it may be said that whether a distribution is properly chargeable to earnings or profits, does not depend upon whether it is a taxable distribution or upon the presumption that all distributions are, under Sections 115(a) and (b), to be considered as dividends, and made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings. "Section 27(f) deals with liquidation distributions from the standpoint of the liquidating corporation rather than the distributee. When it speaks of part of such distribution as being 'properly chargeable' to accumulated earnings, we agree with the Board that the term was used in its ordinary meaning to distinguish between capital and earnings

and without reference to whether the earnings would be taxable in the hands of the distributee." Commissioner v. Kay Mfg. Corp., supra. Likewise, the presumption set forth in Section 115(b) could not be said to govern a specific provision—if there were such a specific provision—that a distribution properly chargeable to capital account, was not to be treated as a taxable dividend paid.

■ Were petitioner's contention concerning the application of Section 27(f) to prevail, it would be necessary to consider as surplusage the important provision of that section specifying "the part of such distribution which is properly chargeable to the earnings or profits," as the part to be used in computing the credit. For petitioner, in effect, claims that all distributions, whether chargeable to earnings or profits, or to capital account, must be considered as paid out of earnings by virtue of Section 115(b). Statutes are to be construed by giving effect to the whole statute and every part thereof. Section 27(f) is, therefore, to be construed as though it provided that no distributions properly chargeable to capital account, are, for the purpose of computing the dividends paid credit, to be treated as taxable dividends paid.

■ In accordance with the foregoing, the presumption set forth in Section 115(b), that every distribution is made out of earnings or profits, to the extent thereof and from the most recently accumulated profits, must yield to the contrary provisions of other sections of the statute, as well as to the exception necessarily implicit in Section 27(f). Without such a compulsion to treat a return of capital, as a distribution of earnings, petitioner's contention, confronted by the provisions of Section 27(h), must fail.

The distribution made by petitioner was not chargeable to earnings but to capital account. Such a distribution is not entitled to be treated as a taxable dividend paid; it is not entitled to a dividends paid credit; and the claimed deduction was properly denied.

The decision of the Board of Tax Appeals (now the Tax Court of the United States) is affirmed.