**Gregory HOGAN, Plaintiff,**

v.

**STATE OF CONNECTICUT JUDICIAL BRANCH, et al., Defendants.**

**No. 3:01–CV–349 (JCH).**

United States District Court, D. Connecticut.

Aug. 30, 2002.

Raymond J. Rigat, Clinton, CT, for Plaintiff.

Jane B. Emons, Attorney General's Office Employment Rights, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 32]

HALL, District Judge.

The plaintiff, Gregory Hogan ("Hogan"), brings this action under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 against the State of Connecticut Judicial Branch ("Judicial Branch") and several of its employees in their official capacities. Hogan alleges that defendants terminated his employment as a Shift Supervisor of Juvenile Detention Officers at the New Haven Juvenile Detention Center for racially discriminatory reasons. Hogan, an African American man, claims that his termination violated equal protection, procedural due process, substantive due process, and Title VII's proscription on the consideration of race in employment decisions.

Defendants seek summary judgment with respect to all claims. More specifically, defendants assert that plaintiff was afforded sufficient procedural protections in connection with his termination; plaintiff's termination did not violate his right to substantive due process; and plaintiff's termination was not racially motivated and therefore violated neither equal protection

or Title VII. Based on the reasons stated below, the court GRANTS defendants' motion for summary judgment.

## I. FACTS

Plaintiff Gregory Hogan was a shift supervisor at the New Haven Juvenile Detention Center from May 19, 1995 until his termination on January 5, 2000. On May 29, 1998, while Hogan was acting as supervisor of all juvenile detention officers, he responded to juvenile detainee FP's unruly behavior by placing FP in mechanical restraints (handcuffs) and leaving him alone in his room. When FP's disruptive behavior continued, Hogan removed the restraints and placed MC, another juvenile detainee, into FP's room. Plaintiff monitored some, but not all, of the interaction between the two detainees. The encounter resulted in an assault by MC on FP.[1] Plaintiff's supervisor, John Chapman, learned of the incident and gave plaintiff a disciplinary warning on May 31, 1998.

In February of 1999, the Department of Children and Families (DCF) for the State of Connecticut received an anonymous complaint which alleged numerous instances of child abuse and neglect at the New Haven Juvenile Detention Center. DCF conducted an investigation of the facility and issued a report on June 1, 1999, citing ninety-eight instances of abuse or neglect at the facility involving nineteen staff members ("DCF Report"). The DCF Report confirmed the May 29, 1998 incidents of physical abuse by Gregory Hogan against detainee FP. That report also cited other cases of physical abuse and neglect involving Hogan.

The Judicial Branch, in order to further investigate the incidents described in the DCF Report, retained the law firm of Rome, McGuigan, & Sabanosh, P.C. to conduct an independent investigation. On June 10, 1999, Hogan was suspended with pay pending the outcome of the independent investigation. Attorney Glen Coe of Rome, McGuigan, & Sabanosh, P.C. performed the investigation and issued a report on November 19, 1999 ("Coe Report"), which stated that fifty-eight of the ninety-eight incidents cited by DCF could be substantiated with "relevant evidence." Plaintiff was implicated in several of these fifty-eight cases. Specifically, the report confirmed five incidents of physical abuse by Hogan, including his use of restraints on FP and the assault by MC on FP on May 29, 1998. Plaintiff disputes the de-

---

**1.** In his Rule 9(c)(2) statement, plaintiff did not deny that MC assaulted FP, but claimed that he "has no reason to believe that FP was ever assaulted by MC during the shift as alleged." Unlike the Federal Rule for answering a complaint, Local Rule 9(c)(2) does not permit a non-movant to claim that he lacks sufficient knowledge to admit or deny a factual assertion. *Compare* Fed.R.Civ.P. 8(b) ("If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial."), *with* D.Conn.Loc. R.Civ.P. 9(c)(2) ("The papers opposing a motion for summary judgment shall include a document ..., which states ... whether each of the facts asserted by the moving party is admitted or denied."). A party responding to a motion for summary judgment presumably has conducted discovery and should have a reasonable, factually supported basis to admit or deny any factual assertions made in the case. Therefore, the court considers admitted any statement with which the plaintiff lacks sufficient knowledge to agree or disagree. *See* D.Conn.Loc.R.Civ.P. 9(c)(1) ("All material facts set forth in [movant's] statement will be deemed admitted unless controverted by the statement required to be served by the opposing party."); *Cooper v. Ragaglia*, 3:96–CV–530 (EBB), 1999 WL 1067680, at *2 (D.Conn. Oct. 19, 1999) ("The purpose of a Rule 9(c)(2) Statement is to make affirmative statements which will aid and inform the Court."). Even if the court interprets plaintiff's statement as a claim that no assault ever occurred, he has come forth with no evidence beyond his own assertions to support this contention. Therefore, that the assault occurred is not a disputed issue of material fact.

scriptions of the incidents contained in the DCF and Coe Reports, alleging they are misrepresentations based on unreliable evidence.

As a result of the findings in the Coe Report, the Judicial Branch held a pre-disciplinary hearing on December 14, 1999, concerning plaintiff's alleged violations of Juvenile Detention Services (now Court Support Services Division) policies and procedures. Following the hearing, the Court Support Services Division (CSSD) terminated Hogan's employment, notifying him of its decision by letter dated January 3, 2000. William Carbone, Executive Director of the CSSD, informed plaintiff that his termination was a result of the events of May 29, 1998, during which the Judicial Branch found he violated nine different sections of department policy. Hogan's termination letter cited both Hogan's use of mechanical restraints on FP and his actions facilitating the assault by MC on FP as the basis for the employment decision. Following his termination, plaintiff submitted his case to arbitration. The arbitrator held eight days of evidentiary hearings between August 16 and October 20, 2000. On January 29, 2001, the arbitrator found that plaintiff had been terminated for just cause.

In total, defendants disciplined seven employees of the New Haven Juvenile Detention Center for various violations of CSSD policy described in the DCF and Coe Reports. Four of these employees were Caucasian; three were African American. The four Caucasian employees all received short suspensions or letters of reprimand. The three African American employees, including plaintiff, were terminated. Of the seven employees disciplined as a result of the DCF/Coe investigation, only plaintiff was found to have engaged in the physical abuse of a detainee.

## II. DISCUSSION

### A. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.,* 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence that would allow a jury to find in his favor. *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Graham,* 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton,* 202 F.3d at 134. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the re-

quirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. The substantive law of the claim governs materiality, as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

## B. Hogan's Title VII Race Discrimination Claim

■ Hogan claims that the defendants terminated him because of his race in violation of Title VII of the Civil Rights Act of 1964. Although "[s]ummary judgment is sparingly used where intent and state of mind are at issue," *Graham,* 230 F.3d at 38, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001). In order to survive a motion for summary judgment on his Title VII claim, Hogan "must come forward with at least some credible evidence that the actions of [defendants] were motivated by racial animus." *Grillo v. New York City Transit Authority,* 291 F.3d 231, 234 (2d Cir.2002). Because this is a disparate treatment case in which the plaintiff alleges that the defendants acted with discriminatory intent or motive, the case is governed by the burden shifting analysis set out in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### 1. *Prima Facie* Case

The initial burden in a disparate treatment claim brought under Title VII is on the plaintiff to establish a *prima facie* case of discrimination. To do so, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he experienced an ad-

verse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000) (citing *McDonnell–Douglas,* 411 U.S. at 802, 93 S.Ct. 1817).

■ In this case, Hogan is African American and is, therefore, a member of a protected class. The parties do not dispute that Hogan suffered an adverse employment action when he was terminated by the Judicial Branch in January of 2000. Defendants do dispute that Hogan was qualified for the position of shift supervisor. However, Hogan's five year term of employment as a shift supervisor in the New Haven Juvenile Detention Center is sufficient evidence to raise at least a material issue of fact that he was generally qualified for his job. *See de la Cruz v. New York City Human Resources Admin.,* 82 F.3d 16, 20 (2d Cir.1996) (to satisfy prima facie test of qualifications, plaintiff "need only demonstrate that he possesses the basic skills necessary for performance of the job"). Finally, because the Judicial Branch's disciplinary actions following the DCF and Coe Reports resulted in the termination of all of African–American employees accused of misconduct and none of the Caucasian employees, the termination occurred under circumstances which could give rise to an inference of discrimination. *See Zimmermann v. Associates First Capital Corp.,* 251 F.3d 376, 381 (2d Cir.2001). Therefore, the court finds that Hogan has established a *prima facie* case of discrimination regarding his termination.

### 2. Legitimate, Non–Discriminatory Reason

Once a plaintiff·has established a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to the defendant to offer a legitimate, non-

discriminatory reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Upon the articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination which arose with the establishment of the *prima facie* case drops out. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Defendants assert that Hogan's termination resulted from his physical abuse and neglect of juvenile detainee FP, in violation of the CSSD's policies and procedures. Defendants support this assertion with extensive documentation, including the DCF Report, the Coe Report, and the arbitrator's findings regarding Hogan's behavior. The court finds that articulation of this reason fulfills the defendants' burden of production. *See Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 65 (2d Cir.1997) (violation of company "no fraternization" policy is a legitimate, non-discriminatory reason).

### 3. Pretext

Once a defendant offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendant intentionally discriminated against him in the employment decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason but was a pretext for discrimination. *Id.* As the Supreme Court explained in *Reeves*:

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.... Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147, 120 S.Ct. 2097 (citations omitted). Evidence that an employer's reason is false, combined with the evidence presented to establish a *prima facie* case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have independent evidence of discrimination. *Id.; see also Zimmermann v. Associates First Capital Corp.*, 251 F.3d at 381–82.

However, there are some instances where such a showing will be insufficient to sustain a finding of liability. One such instance is where "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, ... a second is where the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

■ The Second Circuit has, following *Reeves*, advocated a case-specific approach to determining whether evidence of the falsity of a defendant's reason and a *prima facie* case were enough to support a finding of discrimination. *Zimmermann, supra*. A finder of fact may consider the strength of the *prima facie* case, the probative value of the proof that the defendant's reason is pretextual and any other evidence presented in the case when deter-

mining if the plaintiff has sustained his burden. *Id.*

■ In this case, the plaintiff has alleged that defendants' stated reason for his termination is false. To support his claim, he argues that similarly situated Caucasian employees were treated differently. "A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination." *Graham v. Long Island Rail Road*, 230 F.3d 34, 43 (2d Cir.2000).

■ To be "similarly situated" for the purposes of Title VII, the individuals with whom plaintiff compares himself "must be similarly situated in all material respects." *Shumway*, 118 F.3d at 64. In order to satisfy the "all material respects" requirement, a plaintiff must show that his "co-employees were subject to the same performance evaluation and discipline standards [and] that similarly situated employees who went undisciplined engaged in comparable conduct." *Graham*, 230 F.3d at 40. This standard requires "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.* In other words, the acts of plaintiff and his compa-

rators must be "of comparable seriousness." *Id.*

The employees with whom Hogan compares himself are not similarly situated in all material respects. Hogan claims that every employee who was disciplined as a result of the DCF and Coe investigations is "similarly situated." While it is clear from the record that these employees were subject to the same performance and discipline standards as Hogan, plaintiff has not shown that their conduct was comparable to his. Rather, defendants have introduced evidence indicating that the allegations against Hogan were significantly more serious than those made against his co-employees. While the record indicates that Hogan engaged in physical abuse (namely, the use of restraints against FP and facilitating the assault on FP by MC), there is only evidence of verbal abuse, not physical abuse, against Hogan's white comparators.

■ Plaintiff argues that, while the conduct of his white comparators is not identical to his, it is "comparably serious" and therefore raises an inference of discrimination. However, there is a significant body of law that differentiates physical from verbal abuse and uniformly holds that physical abuse is more serious. This jurisprudence includes provisions governing criminal sentencing,[2] workplace sexual harassment law,[3] and the scope of prisoner's rights.[4] The court concludes, as a

---

**2.** *See* U.S.S.G. § 2A2.3 (providing for a base offense level for minor assault of 6 "if the conduct involved physical contact, or if a dangerous weapon (including a firearm) was possessed and its use was threatened," but 3 otherwise).

**3.** *See Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 437 (2d Cir.1999) ("Although isolated, minor episodes of harassment do not merit relief under Title VII, .... even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an

abusive work environment under Title VII") (quotations omitted); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d. Cir.1995) (same).

**4.** *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987) (the "[v]erbal harassment or abuse [of a prisoner] ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983"); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987) (same); 42 U.S.C. § 1997e(e) (prisoners may not bring civil rights actions based on mental or emotional injury without prior showing of physical injury).

matter of law, that physical abuse of a minor, when carried out by an adult charged with the minor's care, is not of comparable seriousness to verbal abuse. Thus, it cannot be said that Hogan and his white comparators are similarly situated in all material respects.[5]

■ Neither does the fact that several other employees of the New Haven Juvenile Detention Center also violated CSSD policy render these employees similarly situated to Hogan. Different violations of policy warrant different employer responses, and they cannot be compared for Title VII purposes unless they are equally serious. *See Shumway,* 118 F.3d at 64. (plaintiff failed to show males who also violated "no fraternization" policy were similarly situated where there was no evidence that any of the comparators engaged in misconduct that included a long term relationship, harassing behavior, and lying).

Hogan's comparison of himself with Joseph Mirto is also not probative of discrimination. Mirto is a white juvenile detention officer who defendants found used excessive force against a detainee a year prior to the DCF and Coe investigations. Defendants terminated. Mirto following the incident of physical abuse, but, following a favorable ruling in post-termination proceedings, an arbitrator ordered that he be restored to his job.

■ The comparison with Mirto illustrates that Hogan's employer treated him identically to a similarly situated white employee, i.e., one who was found to have engaged in the physical abuse of a detainee. As a result of the findings of abuse, the Judicial Branch terminated both Hogan and Mirto. The fact that an arbitrator ordered Mirto returned to his job, while

upholding Hogan's termination, is of no evidentiary value to plaintiff in his proof of discriminatory conduct. An inference of discrimination is only established if "the *employer* subjected [the employee] to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham,* 230 F.3d at 39 (emphasis added). Therefore, Hogan has not established that a reasonable jury could find the defendants' proffered reasons are pretextual.

Nor has Hogan introduced any other evidence to suggest that a discriminatory purpose motivated defendants' actions. As evidence of racial bias, Hogan references a statement made by his supervisor, John Chapman, regarding the racial imbalance in the DCF Report's accusations. Chapman noted that, upon reading that report, he thought that it might reflect "unconscious bias" on the part of DCF investigators. Chapman's comment cannot be construed as racist. In fact, it is quite the opposite. Through it, Chapman demonstrated that he is sensitive not only to the existence of overt racial bias, but also to its more subtle forms.

Regardless of the court's interpretation of this statement, however, it is neither probative of discrimination nor sufficient to withstand defendants' motion for summary judgment. Neither party claims that Chapman was involved in the decision to terminate Hogan's employment. Plaintiff stated in his deposition that William Carbone, the head of CSSD, made the decision to fire him. Further, even if Chapman was responsible for firing Hogan, and his statement could be construed as racist, this evidence alone would be

---

5. The court acknowledges that there is evidence before it that the Judicial Branch terminated two African–American employees who did not engage in physical abuse. Although proof of discrimination against other African–American employees may support Hogan's claim under a mixed motive framework, *see infra* at 16–17, it is not probative of individual disparate treatment.

insufficient to support a jury verdict in plaintiff's favor. *Woroski v. Nashua Corporation,* 31 F.3d 105, 109–10 (2d Cir.1994) (evidence of stray discriminatory remarks by employer insufficient to withstand properly supported motion for summary judgment).

Plaintiff also alleges that the findings contained in the DCF and Coe Reports were false, and the Judicial Branch should not have relied on them in making its termination decision. Even if the findings were incorrect, this fact alone would not support a reasonable jury's verdict in plaintiff's favor. To sustain its employment decision, defendants need not show that the information in the report was actually correct, but only that defendants reasonably relied on the results. *See Graham,* 230 F.3d at 44 (employer can sustain employment decision by showing that it reasonably relied on laboratory results from drug test, even if results are incorrect). Because plaintiff has introduced no evidence to show that his employer purposefully interfered with the results of the investigations in order to discriminate against him or in any way unreasonably relied upon it, a jury could only conclude that defendants' reliance on the evidence in the reports was reasonable. *Id.*

In sum, the court finds that Hogan has not met his burden of establishing that the defendants' legitimate, non-discriminatory reason for his termination is pretextual.

#### 4. Mixed Motive Framework

Plaintiff also suggests that the court should analyze his claim using the "mixed motives" framework set out in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In discrimination cases involving mixed motives, a plaintiff must present evidence that "is sufficient to allow a trier to find both forbidden and permissible motives" driving the adverse employment action. *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 913 (2d Cir.1997). Sufficient evidence of forbidden motives "shifts to the defendant the burden of showing that the plaintiff would have been fired even if there were no discriminatory motivating factor." *Id.* The Second Circuit has held that a mixed motives analysis is proper when

> the plaintiff presents evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, and that evidence is sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision.

*Ostrowski v. Atlantic Mut. Ins. Companies,* 968 F.2d 171, 182 (2d Cir.1992).

In this case, Hogan has presented no evidence that could lead a reasonable factfinder to infer that defendants' decision to terminate him was infected with racial animus. As discussed above, Hogan and his white comparators are not similarly situated so as to raise an inference of discriminatory intent, and John Chapman's statement regarding the DCF investigation is also not probative of racial animus.

The disparity in treatment of the African American and white employees disciplined as a result of the DCF and Coe investigations also fails to establish that racial bias "was more likely than not a motivating factor in the employer's decision." *Ostrowski, supra.* The fact that defendants terminated three African American employees, while reprimanding or suspending four white employees, is insufficient, standing alone, to support an inference of discrimination. In order to be probative of discrimination, racial disparities in employment outcomes must be "statistically significant." *Ottaviani v. State University of New York at New Paltz,* 875

F.2d 365, 371 (2d Cir.1989). A sample size of seven is simply too small to support any meaningful statistical conclusions. *See Mayor of City of Philadelphia v. Educational Equality League*, 415 U.S. 605, 621, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974) (statistics regarding racial composition of thirteen-member school board nominating panel were meaningless); *Haskell v. Kaman Corp.*, 743 F.2d 113, 121 (2d Cir.1984) (ten terminations over eleven-year period too few to permit inference of discrimination).

Hogan has not presented any other evidence, aside from the disparity in outcomes among the seven employees disciplined as a result of the DCF and Coe investigations, to support a conclusion that racial bias motivated defendants' decision to terminate Gaskins and McCullough, the other two African American employees. Defendants have illustrated that the disparity in outcomes has a non-discriminatory explanation—the Judicial Branch terminated Gaskins and McCullough because both had previously violated CSSD policy. Hogan has not offered any evidence in refutation of these stated reasons or otherwise supporting a reasonable factfinder's conclusion that these terminations were discriminatory. Because there is no evidence of discrimination in the termination of Gaskins and McCullough, the circumstances surrounding their firing cannot support a conclusion that racial bias was most likely a factor in the decision to terminate Hogan's employment. Hogan, therefore, has not introduced sufficient evidence to shift the burden to defendants to prove that he would have been fired regardless of his race.

Based on the above analysis, the court grants the defendants' motion for summary judgment as to plaintiff's Title VII claims.

## C. Equal Protection

In order to show a violation of the Equal Protection clause, "[p]roof of racially discriminatory intent or purpose is required." *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). In failing to establish disparate treatment under Title VII, Hogan also necessarily fails to establish a violation of his equal protection rights. *See Silver v. City University of New York*, 947 F.2d 1021, 1023 (2d Cir.1991) (plaintiff's equal protection claim fails for the same reasons as Title VII claim). As a result, defendants' motion for summary judgment with respect to plaintiff's equal protection claim is granted.

## D. Due Process

### 1. Procedural Due Process

In his opposition to defendants' motion for summary judgment, plaintiff asserts that his procedural due process rights were violated (1) by defendants' termination of him after he had already been verbally disciplined by his supervisor for the incident involving FP and MC, and (2) by procedural irregularities at his arbitration hearing.

Plaintiff's first claim is novel and unsupported by case law. Once a lesser disciplinary action has been taken in response to employee misconduct, it does not follow that a defendant cannot later be fired for that same misconduct. Chapman's verbal reprimand of plaintiff did not immunize him from further disciplinary action by the Judicial Branch. Hogan has not cited to any precedent that would support the elevation of this alleged wrong to a constitutional violation.

Plaintiff's claim of procedural irregularities is equally unavailing. Hogan has not identified what irregularities he

believes occurred, nor has he offered any admissible evidence in support of this claim. The only specific irregularity he claims is that defendants urged Reggie Mayo, a juvenile detention officer on duty the night of the incident involving FP and MC, to testify falsely at Hogan's arbitration hearing. Hogan does not, however, offer any evidence to support this claim, other than his own statement that Mayo reported defendants had applied this pressure. A claim supported only by the plaintiff's bald assertions, which in this case are inadmissible hearsay, cannot withstand summary judgment. Therefore, defendants' motion is granted with respect to plaintiff's procedural due process claim.

## 2. Substantive Due Process

■ Hogan's opposition to summary judgment also claims that his termination violated substantive due process because (1) it was racially motivated, and (2) it was arbitrary and done in response to the public outcry over the findings in the DCF Report. Hogan's first allegation is not a cognizable substantive due process claim. The Second Circuit has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Tenenbaum v. Williams*, 193 F.3d 581, 599 (2d Cir.1999) (quoting *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion of Rehnquist, C.J.) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))). Hogan's first substantive due process is identical to his equal protection claim. The equal protection clause provides explicit textual protection against race-motivated state action, and therefore, Hogan's claim that his employment was terminated on the basis of race should be analyzed exclusively under the law of equal protection, not substantive due process.

■ Hogan's second claim has no factual basis and is facially insufficient to support a violation of substantive due process. Hogan alleges that his termination was arbitrary and that the defendants made him a scapegoat for all of the misconduct at the New Haven Juvenile Detention Center. Other than his own speculation, Hogan has not introduced any evidence that would support this finding at trial.

■ Even if Hogan could support this claim factually, it would not be cognizable under the Fourteenth Amendment's guarantee of substantive due process. The "touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Only "the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 846, 118 S.Ct. 1708 (citations omitted). The due process guarantee does not impose "liability whenever someone cloaked with state authority causes harm," but rather is only implicated "at the ends of the tort law's spectrum of culpability." *Id.* at 848, 118 S.Ct. 1708. Even if Hogan could show that defendants fired him for public relations purposes, as he alleges, defendants' conduct would not "shock the conscience [or] violate[ ] the decencies of civilized conduct," *Lewis*, 523 U.S. at 846, 118 S.Ct. 1708 (quoting *Rochin v. California*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)) (quotation omitted), as is necessary to amount to a substantive due process violation. Defendants' motion for summary judgment with respect to plaintiff's substantive due process claim is therefore granted.

## III. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [Dkt. No. 32] is GRANTED as to all claims asserted in the complaint. As they contain the full names of juvenile detainees housed at the New Haven Juvenile Detention Center, it is ordered that the exhibits attached to defendants' Rule 9(c) statement [Dkt. No. 34] be sealed for inspection only by reviewing courts. The clerk is ordered to close this case.

**SO ORDERED.**